RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LANDON LANE,

　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

CITY OF LAFOLLETTE, TENNESSEE; CLIFF JENNINGS,
Mayor, ROBERT FANNON, City Councilman,
HANSFORD HATMAKER, City Councilman, in their
individual capacities,

　　　　　　　　　*Defendants-Appellants,*

CLIFF JENNINGS, Mayor, et al., in their official
capacities,

　　　　　　　　　*Defendants.*

No. 06-5803

>

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 05-00127—Thomas W. Phillips, District Judge.

Argued: April 24, 2007

Decided and Filed: June 6, 2007

Before: SUHRHEINRICH, CLAY, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Nathan D. Rowell, WATSON, ROACH, BATSON, ROWELL & LAUDERBACK,
Knoxville, Tennessee, Daniel H. Rader III, MOORE, RADER, CLIFT & FITZPATRICK,
Cookeville, Tennessee, for Appellants. J. Timothy Bobo, RIDENOUR & RIDENOUR, Clinton,
Tennessee, for Appellee. **ON BRIEF:** Nathan D. Rowell, WATSON, ROACH, BATSON,
ROWELL & LAUDERBACK, Knoxville, Tennessee, Daniel H. Rader III, MOORE, RADER,
CLIFT & FITZPATRICK, Cookeville, Tennessee, for Appellants. J. Timothy Bobo, RIDENOUR
& RIDENOUR, Clinton, Tennessee, for Appellee.

1

———————————

**OPINION**

———————————

CLAY, Circuit Judge.   Plaintiff Landon Lane is the former Recreation Director of the city of LaFollette, Tennessee (the "City").  In the November, 2004 mayoral election, Plaintiff supported Defendant Cliff Jennings' opponent, Lucy Lobertini.  Defendant Jennings won the election.  After the election, Defendants Jennings, Robert Fannon and Hansford Hatmaker, all members of City Council, voted to terminate Plaintiff.  Plaintiff sued Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that they violated several of his rights secured by the United States Constitution, primarily his First and Fourteenth Amendment right not to be terminated from government employment on account of his political beliefs.  Defendants moved for summary judgment, arguing that they did not vote to terminate Plaintiff because of his political beliefs, and, even if they had, the nature of Plaintiff's position was such that Plaintiff could legally be terminated for political reasons.  Defendants also contended that their actions were protected by the doctrine of qualified immunity.  The district court denied Defendants' motion for summary judgment with respect to Plaintiff's federal constitutional claims, and Defendants brought this interlocutory appeal challenging the district court's refusal to credit their defense of qualified immunity.  In addition, Defendants challenge the district court's refusal to grant summary judgment in their favor on Plaintiff's official-capacity claims.  For the reasons that follow, we **AFFIRM** the district court's denial of qualified immunity, and **DISMISS** Defendants' challenge to Plaintiff's official-capacity claims for want of jurisdiction.

**BACKGROUND**

This case concerns the position of Recreation Director of the City of LaFollette (the "Recreation Director").  What constitutes the job duties of the Recreation Director is a factual matter, the resolution of which is necessary to deciding the issues presented in this appeal; it is also a factual matter that Plaintiff and Defendants dispute.  For the purpose of this appeal, information about the Recreation Director's job duties comes from three sources: the Charter of the City of LaFollette, Tennessee (the "City Charter"), the City of Lafollette Employee Handbook & Personnel Policies (the "Employee Handbook"), and the parties' affidavits.

The structure of the City's government is detailed in the City Charter.  Article II of the City Charter vests broad "general powers" in the City Council, and identifies many specific responsibilities of the City Council.  J.A. at 62.  Article V addresses the responsibilities of the City Administrator, whose duties include "supervis[ing] and coordinat[ing] all administrative activities of the affairs of the city under the City Council."  J.A. at 67.  Article V also enumerates nine specific duties of the City Administrator.  Information relevant to the position of Recreation Director is located in Articles VI and VII of the City Charter.  The City Charter does not, however, define the responsibilities of the Recreation Director.  Article VI of the City Charter addresses "Other City Officers."  Article VI states in relevant part:

> Section 1.  Appointment of Officers.  The City Council shall elect by majority vote the following officers:  City Clerk, City Attorney, City Judge, Treasurer, Chief of Police, Public Works Director, Street and Sanitation Operations Manager, Codes Enforcement Officer, Recreation Director, Animal Control Officer, and Fire Chief.  Such officers shall serve at the pleasure of the City Council.

> All Officers shall be elected with due regard to their qualifications and fitness and for the good of the public service, and without reference to race, age, color, creed, sex, or political party affiliation.

It shall be unlawful for any candidate for office or any candidate for appointed office to give or promise any person, either directly or indirectly, any office, position, employment benefit, or anything of value for the purpose of influencing or obtaining the political support, aid, or vote of any person.

J.A. at 68.

Article VII addresses "Administration and Finance." Article VII states in relevant part:

Section 1. Administrative Organization. The City Council shall determine the powers and duties to be performed by each department, shall prescribe the powers and duties of all officers and employees, and may require an officer or employee to perform duties in any number of departments. The administrative organization, under the supervision of the City Administrator, shall be organized into the following departments: (1) Department of Finance; (2) Department of Public Safety; (3) Department of Public Works; and (4) Department of Recreation.

The City Council shall have the power to change the departmental organization by ordinance upon recommendation from the City Administrator.

J.A. at 69.

Additionally, the parties support their positions by reference to the Employee Handbook. The Employee Handbook contains a policy statement informing the employee that "[e]mployment with the City of LaFollette is at will."[1] J.A. at 34. The Employee Handbook also provides an overview of the government of the City:

The Mayor and City Council establish policy and enact ordinances and resolutions for the development of the entire community. As elected officials, the Mayor and City Council set the policies by which the City of LaFollette government functions.

The City Administrator is the Chief Administrative Officer of the City of LaFollette and is responsible for handling the administrative affairs of the City government within the framework of the City Charter and policies adopted by the Mayor and City Council.

J.A. at 76.

The Employee Handbook also contains a section entitled "Miscellaneous Policies," subsection A of which addresses "Political Activity." Subsection A states in relevant part:

No person in the service of the City of LaFollette or seeking admission thereto, shall be appointed, reduced, removed, or in any way favored or discriminated against because of political opinions or affiliations.

---

[1]The policy statement elaborates:

No provisions of these policies or any policies adopted by the City of LaFollette shall be construed as an employment agreement or legal contract. Employment with the City of LaFollette is at will (i.e. it may be terminated at any time, with or without cause, either by the employee or by the City of LaFollette). The City of LaFollette, however, will not terminate any employee for reasons that violate State or Federal Law.

J.A. at 34.

> Nothing in this section is intended to prohibit any municipal government employee from privately expressing his/her political views or from casting his/her vote in all elections.

J.A. at 78.

Also included in the Employee Handbook is an organizational chart of the City. According to the chart, the City Council holds the highest position in the City. The City Administrator answers directly to the City Council. Beneath the City Administrator, and answering to the City Administrator, are the City Safety Coordinator, City Attorney, and City Judge, who are each on the same organizational level. The Recreation Director is on the same organizational level as nine other offices, which are located below the Safety Coordinator, City Attorney, and City Judge, but nevertheless answer directly to the City Administrator. These nine other offices are: Police Chief, Administrative Services, City Treasurer, City Clerk, Public Works, Library, Animal Control, Codes Enforcement, and Fire Chief.

In addition to the documents describing the City, the parties submitted affidavits addressing the job functions of the Recreation Director. While the parties give starkly different descriptions of the position, no party describes the actual duties of the Recreation Director with significant detail. Defendants do not uniquely address the responsibilities of the Recreation Director, but instead address the job functions that they contend are common to each director of the four departments enumerated in Article VII of the City Charter. According to Defendants, department directors, including the Recreation Director, "submit annual budgets[,] formulate policies[,] and set the goals[,] responsibilities and functions for their departments." J.A. at 20. The department directors also "advise the City Council on policy and personnel matters, including employment decisions involving promotion, demotion, termination and hiring members of their department." J.A. at 20. This includes determining "when subordinates have committed a policy infraction or [have] engaged in misconduct," and conducting "periodic workload assessments to ensure [that] the departments are adequately staffed." J.A. at 20. Moreover, the department directors, including the Recreation Director, "possess the authority to employ all discipline measures short of unpaid suspension and termination without the consent and approval of the City Council." J.A. at 20-21. The department directors are "responsible for the operation of their Department," and this involves "handl[ing] routine administrative tasks with respect to the operation of their Department and the management of the employees situated there under [sic]." J.A. at 21. Finally, Defendants allege that the "City Council and the Mayor rely upon the Heads of the Department [sic] to promote and effectuate the policy of the City Council, and said Department Heads assist and advise the City Council with respect to the formulation and implementation of said policy decisions and program development."[2] J.A. at 21.

Plaintiff disputes this characterization. Without providing specific details, he asserts that the position of Recreation Director does not involve policymaking. He alleges that the Mayor and the City Council establish policy and enact ordinances, and that he did not make any policy or have discretion as to how to implement the policies set by the Mayor and the City Council. Plaintiff contends that he did not advise the City Council or assist the City Council in implementing the policies of the Recreation Department. Plaintiff concedes that he would recommend employees within his department for promotions and pay raises, but he states that the ultimate decision on employment matters rests with the City Council. Lastly, Plaintiff notes that the hiring of part-time employees is done by the City Administrator and the hiring of full-time employees is done by the City Council.

---

[2]The foregoing allegations are drawn from the affidavit of Defendant Jennings. Defendants Fannon and Hatmaker also submitted affidavits which contain similar descriptions of the duties of the Recreation Director.

In contrast to the dispute over the duties of the Recreation Director, the events leading up to this litigation are comparatively straightforward. Plaintiff was hired as the Recreation Director on August 5, 2003. At the time that Plaintiff was hired, Lucy Lobertini was the mayor of the City. Lobertini ran for reelection against Defendant Cliff Jennings in the November, 2004 election. Plaintiff supported Lobertini during his personal time away from the office. In the runup to the election, Defendant Jennings allegedly threatened to remove Plaintiff unless Plaintiff ceased supporting Lobertini. Defendant Jennings won the election. Additionally, in the same election, Defendant Hatmaker was reelected as a city councilman; Defendant Fannon's position as city councilman was not up for reelection in the 2004 election. Prior to Plaintiff's termination, in a workshop before the City Council, Defendant Jennings allegedly stated that he was recommending that Plaintiff be terminated for political reasons. On January 4, 2005, Defendants voted to terminate Plaintiff's employment. They hired Johnny Byrge as Recreation Director, who allegedly had less experience and education than Plaintiff.

On March 10, 2005, Plaintiff filed a complaint in the Eastern District of Tennessee. Plaintiff's complaint alleged five causes of action. The first cause of action alleged that Defendants, acting in their official capacities, violated 42 U.S.C. § 1983 by depriving Plaintiff of a property interest in his position as Recreation Director without due process of law, because they terminated him on account of his political opinions. Plaintiff's second cause of action alleged that Defendants, acting in their official capacities, deprived Plaintiff of his right to equal protection under the law by terminating him on account of his political opinions, in violation of § 1983. Plaintiff's fourth cause of action alleged that Defendants, acting in their individual and official capacities, violated Plaintiff's right to freedom of speech and association by terminating him in retaliation for political activity, in violation of § 1983. Plaintiff's third and fifth causes of action alleged violations of the Tennessee constitution. Plaintiff included the City as a defendant in each cause of action.

On February 8, 2006, Defendants, acting in both their individual and official capacities, filed a motion for summary judgment. The City filed a motion for summary judgment on February 13, 2006. The district court issued an opinion and order granting the City's and Defendants' motions in part and denying the City's and Defendants' motions in part on June 14, 2006. *Lane v. City of LaFollette*, No. 3:05-CV-127, 2006 WL 1663693 (E.D. Tenn. June 14, 2006) (unpublished). The district court held that factual disputes existed as to whether Plaintiff was terminated on account of his political beliefs, and therefore summary judgment could not be granted in favor of the City or Defendants on the ground that Plaintiff's termination was not in retaliation for protected speech. *Id.* at \*4. The district court also found that Defendants and the City had not sufficiently supported their position that Plaintiff's employment was of a type that could be terminated for political reasons. *Id.* at \*5. Furthermore, the district court held that qualified immunity was inappropriate, because the Sixth Circuit had denied qualified immunity to similarly situated defendants in the past. *Id.* at \*6 (citing *Heggen v. Lee*, 284 F.3d 675, 688 (6th Cir. 2002); *Caudill v. Hollan*, 431 F.3d 900, 907-11 (6th Cir. 2005)).

The district court rejected Defendants' argument that they could not be held liable in their official capacities, holding that the minutes of City Council meetings demonstrated that Defendants had the authority to establish official policy for the City. *Id.* at \*7. The district court also rejected Defendants' and the City's claim that, because Plaintiff was an at-will employee, Plaintiff could be terminated for cause or no cause. *Id.* at \*8. Although conceding that Plaintiff was an at-will employee, the district court concluded that Plaintiff could not be terminated for exercising his First Amendment rights. *Id.* However, the district court granted the City's motion for summary judgment with respect to Plaintiff's claims arising under the Tennessee constitution, holding that the Tennessee constitution did not provide a private cause of action. *Id.*

Defendants filed a timely notice of appeal on June 14, 2006. The basis for Defendants' interlocutory appeal was the district court's denial of qualified immunity. The City also gave notice

of appeal, alleging that the issues associated with Plaintiff's claims against the City were inextricably intertwined with Plaintiff's claims against the individual defendants. *See Tucker v. City of Richmond*, 388 F.3d 216, 224 (6th Cir. 2004) ("The exercise of pendent jurisdiction, while discretionary, is appropriate where the appealable and non-appealable issues are 'inextricably intertwined.'" (internal quotations removed) (quoting *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1157-58 (6th Cir. 1996))).

## DISCUSSION

### I.          Claims Against Defendants in their Individual Capacity

Defendants brought this interlocutory appeal challenging the district court's denial of their defense of qualified immunity. The denial of a claim of qualified immunity is an appealable "final decision" for the purpose of 28 U.S.C. § 1291, which vests the courts of appeals with jurisdiction over final decisions of the district courts, but only to the extent that the claim of qualified immunity turns on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). If the denial of qualified immunity turns on an issue of fact, this Court has no jurisdiction to resolve the claim. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Whether a particular job is entitled to First Amendment protection from patronage dismissals and the related question of whether the law was sufficiently unclear to entitle Defendants to qualified immunity are both legal questions to which this Court's jurisdiction extends. *See Sowards v. Loudon County, Tenn.*, 203 F.3d 426, 435 (6th Cir. 2000) ("Whether political affiliation is an appropriate consideration for a government position is a question of law."); *McCloud v. Testa*, 97 F.3d 1536, 1546 (6th Cir. 1996) (holding that whether "the law was sufficiently clear" was a question of law).

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Heggen v. Lee*, 284 F.3d 675, 686 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity involves a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). First, the court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Id.* at 201. If the party asserting the injury was deprived of his constitutional rights, then the court must go on to ask whether that right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Plaintiff's claims arise under 42 U.S.C. § 1983. In order to establish a violation of § 1983, Plaintiff must show that Defendants deprived him of his rights secured by the Constitution while acting under color of state law. *See Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358-59 (6th Cir. 2001). "Since the Supreme Court issued its opinion in *Elrod v. Burns*, 427 U.S. 347 (1976), patronage dismissals (*i.e.*, dismissals for failure to support a particular party or candidate) have been, in general, unconstitutional." *Caudill*, 431 F.3d at 908. This rule represents the outcome of the Supreme Court's application of the strict scrutiny required by the First Amendment to the interests promoted by the party patronage system. *See McCloud*, 97 F.3d at 1543. Allowing the government to deny a benefit to an individual because that individual exercised his First Amendment rights presents two principal dangers. First, the inevitable tendency of a system of party patronage is to coerce employees into compromising their true political beliefs. *Branti v. Finkel*, 445 U.S. 507, 513-14 (1980). The second danger, which is related to the first, is that the denial of a government benefit on account of a person's political beliefs is in effect a penalty for holding those beliefs; permitting the state to impose such a penalty would constitute an "unconstitutional condition" that would allow the state to indirectly interfere with an employee's constitutional rights in a manner that it could not accomplish directly. *Id.* at 514; *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[E]ven

though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.").

Despite the costs of patronage dismissals, the Court in *Elrod* recognized that "party affiliation may be an acceptable requirement for some types of government employment." *Branti*, 445 U.S. at 517. While these positions have been referred to as "policymaking" or "confidential," whether those labels appropriately fit the position under consideration is not the ultimate inquiry. *Id.* at 518. Instead, the test is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* In answering this question, the Court looks not to the position as it was performed by the terminated employee, but instead to the inherent duties of the position, and to the duties that the new holder of that position is expected to perform. *Faughender v. City of N. Olmsted*, 927 F.2d 909, 913 (6th Cir. 1991).

The first step in analyzing a claim of patronage dismissal requires asking whether the party asserting that he was wrongfully terminated has produced sufficient evidence for a jury to find that he was discharged because of his political beliefs or affiliations. *Caudill*, 431 F.3d at 909. If the terminated party makes this showing, then the burden shifts to the employer to demonstrate that the terminated party's job was one for which political affiliation was an appropriate requirement. *Id.*

Defendants first argue that, as the Recreation Director, Plaintiff served "at the pleasure of the City Council" and could be dismissed for "good cause, bad cause, or no cause at all." Defendants' Br. at 32 (quoting *Shelby v. Delta Air Lines, Inc.*, 842 F. Supp. 999, 1006 (M.D. Tenn. 1993), *aff'd*, 19 F.3d 1434 (6th Cir. 1994)). This contention can be dismissed out of hand. The Supreme Court squarely rejected this argument in *O'Hare Truck Services v. City of Northlake*: "The Court has rejected for decades now the proposition that a public employee has no right to a government job and so cannot complain that termination violates First Amendment rights . . . . A State may not condition public employment on an employee's exercise of his or her First Amendment rights." 518 U.S. 712, 716 (1996); *see also id.* at 725-26 ("Government officials may indeed terminate at-will relationships . . . without cause; but it does not follow that this discretion can be exercised to impose conditions on expressing, or not expressing, specific political views."). If Plaintiff can demonstrate that he was terminated on account of his political beliefs, then the fact that he was an at-will employee who could have been terminated for other permissible reasons is irrelevant to the ultimate question of Defendants' liability.

Plaintiff has produced sufficient facts to raise a genuine issue of fact as to whether his termination was politically motivated. Plaintiff alleges that Defendant Jennings threatened him in an attempt to convince Plaintiff to cease supporting Lobertini in the mayoral election. Plaintiff also contends that Defendant Jennings stated in a workshop before the City Council that his recommendation to terminate Plaintiff was political. The temporal proximity between Defendant Jennings' assumption of power and Plaintiff's termination also bolsters Plaintiff's allegations. Defendant Jennings became the mayor on December 1, 2004, and Plaintiff was terminated on January 4, 2005. Plaintiff has created a genuine issue of fact as to Defendants' motives for terminating him; it is therefore immaterial that Plaintiff was an at-will employee.

For the first time at oral argument, Defendants Fannon and Hatmaker argued that, even if the record contained evidence that Defendant Jennings terminated Plaintiff for political reasons, summary judgment should be granted in favor of Defendants Fannon and Hatmaker because Plaintiff has not produced evidence that their decision to terminate Plaintiff arose from a motive to retaliate against him for his political activity. As an initial matter, we note that Defendants Fannon and Hatmaker have waived this argument by not including it in their brief. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).

In any event, Plaintiff has produced sufficient evidence to survive summary judgment. Plaintiff's allegation that Defendant Jennings "stated in a workshop before the city council that the recommendation to terminate [Plaintiff] was political" implies that Defendants Fannon and Hatmaker, whose votes were necessary in order to terminate Plaintiff, were aware of Defendant Jennings' opinion that Plaintiff should be terminated for his political beliefs. J.A. at 46. Plaintiff also alleges that Defendants Fannon and Hatmaker "voted to terminate [Plaintiff] from [his] position as [Recreation Director] due to [Plaintiff's] political beliefs and association." J.A. at 46. Moreover, Defendant Hatmaker states that "[i]t has been the custom, practice and policy of the City Council of LaFollette to replace and/or renew all Department Heads after each City election;" J.A. at 24, Defendant Fannon contends that "[w]hen the new administration began . . . new Department Heads or 'cabinet level' individuals were selected who would best serve the City Council in promoting, coordinating, [and] assisting to formulate and implement the policies for the City government." J.A. at 29. While certainly not conclusive, these statements each suggest that political considerations were the impetus for Plaintiff's termination, a fact which, if true, strengthens Plaintiff's claim that he was terminated on account of his political beliefs. These facts suffice to allow a reasonable jury to find that Defendants Hatmaker and Fannon voted to terminate Plaintiff in retaliation for protected First Amendment conduct.

The closer question in this appeal is whether Defendants have carried their burden of demonstrating that Recreation Director is a position for which political party affiliation is an appropriate consideration. *See Branti*, 445 U.S. at 518. We conclude that, on the record before us, factual disputes prevent us from resolving this question as a matter of law. The nub of the problem is that the record discloses neither the inherent duties of the Recreation Director, nor the duties of the position as envisioned by Defendants. *See Faughender*, 927 F.2d at 913.

In his affidavit, Plaintiff baldly asserts that his position "was not a policy making position;" he claims that he did not "make any policy or have discretion implementing the policies set by the mayor and city council," "advise the council on policies," or "assist the city council in formulating or have discretion in implementing the policies for the recreation department." J.A. at 46. Standing alone, Plaintiff's conclusory allegations, which provide no guidance as to what the Recreation Director actually does, might not carry significant weight. But Plaintiff's allegations do not stand alone; his position is reinforced by the City Charter and the Employee Handbook.

Under the doctrine announced in *Rice v. Ohio Department of Transportation*, "the legislature's decision as to whether a particular job should be classified as political or nonpolitical is at least entitled . . . to 'some deference.'" 14 F.3d 1133, 1143 (6th Cir. 1994) (quoting *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 246 (1st Cir. 1986) (en banc)). Here, the State of Tennessee has arguably spoken to whether party affiliation is an appropriate requirement for the effective performance of the job of Recreation Director. The City Charter, which is the law of Tennessee, states that "[a]ll officers [which includes the Recreation Director] shall be elected with due regard to their qualifications and fitness and for the good of the public service, and without reference to . . . political party affiliation." J.A. at 68. Thus, the plain language of the City Charter, which the City Council is powerless to change, strongly suggests that Tennessee's position is that party affiliation is not a valid factor to consider in deciding whether the Recreation Director should be terminated.

The Employee Handbook also provides Plaintiff with some support for his contention that Recreation Director is not a position whose holder may be discharged on account of his political affiliations. While descriptions contained within an employee handbook typically will not definitively enumerate a particular position's responsibilities, the contents of the employee handbook are relevant to that inquiry. *See Gonzalez v. Benavides*, 712 F.2d 142, 149 (5th Cir. 1983) (relying on information contained within an employee handbook); *cf. Latham v. Office of Attorney Gen.*, 395 F.3d 261, 268 (6th Cir. 2005) (analyzing the plaintiff's job description as a component

of the *Branti* inquiry).  In this case, the Employee Handbook locates policymaking authority with the Mayor, the City Council, and the City Administrator.  This fact alone undoubtedly does not resolve the question of whether the Recreation Director is a policymaker for purposes of *Branti* and the cases interpreting it.  Policymaking authority can be delegated from positions explicitly vested with that authority to subordinates, placing the subordinates within the exception to *Branti*'s rule forbidding patronage dismissals.  *See McCloud*, 97 F.3d at 1557; *Bicanic v. McDermott*, 867 F.2d 391, 394 (7th Cir. 1989) (upholding dismissal of parks and recreation coordinator notwithstanding the fact that the city had the last formal word on policymaking subjects).  Yet notwithstanding the prospect that the City Council or City Administrator delegated functional policymaking authority to the Recreation Director, the fact that the Employee Handbook locates all policymaking authority outside of the Recreation Director's office supports Plaintiff's claim that his former position did not involve policymaking of the type that would make its holder terminable on account of his political beliefs.

The Employee Handbook also bolsters Plaintiff's claim by explicitly stating that "[n]o person in the service of the City of LaFollette . . . shall be . . . removed . . . because of political opinions or affiliations."  J.A. at 78.  Thus, according to the City's own materials, political affiliation is not permissible to consider when deciding whether to terminate the Recreation Director.  True, Defendants may be capable of redefining the position of Recreation Direction, provided that Defendants act "with a good faith belief that such a transformation is necessary to implement [their] policies."  *Baker v. Hadley*, 167 F.3d 1014, 1020 (6th Cir. 1999) (quoting *Faughender*, 927 F.2d at 914).  The record, however, contains no evidence that Defendants have redefined the position of Recreation Director.

Defendants argue that Plaintiff (1) "managed his own department of the City," (2) "made the departmental budget," (3) "independently made significant employment decisions with respect to schedule, staff and discipline," (4) worked with the City Council "in a close and confidential manner to formulate and implement policies for his department," (5) "controlled the communications between his department and the City Council," (6) "controlled communication between his department and the public," and (7) "acted as the 'alter ego' of the [City] and the City Council with respect to the day to day management of the recreation department."  Defendants' Br. at 24.

We need not decide whether, if true, these allegations would make the Recreation Director removable for his political beliefs.  We simply hold that, on this record, Defendants have not carried their burden of demonstrating that political affiliation is an appropriate requirement for the Recreation Director, because the duties of the Recreation Director remain too ill-defined for us to adjudicate the issue as a matter of law.[3]  *See McCloud*, 97 F.3d at 1558 ("[I]n the situation where the inherent duties of the plaintiffs' positions are not apparent and the facts are not yet fully developed, it is not possible for us to decide, when reviewing in an interlocutory posture the denial of a motion for summary judgment, whether a defendant should be granted qualified immunity with respect to those positions.").  Defendants' affidavits do not specifically speak to the position of Recreation Director, but instead refer in blanket terms to the functions of the heads of all four

---

[3]Defendants also cannot prevail at this stage of the litigation by relying upon the deference afforded to reasonable decisions under the doctrine of qualified immunity.  *See Saucier*, 533 U.S. at 202.  After the facts concerning the duties of the Recreation Director are developed, Defendants will of course be entitled to qualified immunity if the illegality of their alleged decision to terminate Plaintiff for his political beliefs was unclear under the law as it existed at the time Defendants terminated Plaintiff.  *Id.*  We cannot, however, determine whether the law clearly established the illegality of Plaintiff's termination without further factual development.  Stated alternatively, the undisputed facts presently before the Court do not allow us to grant qualified immunity to Defendants as a matter of law.

departments of the City.**4** Moreover, Defendants' allegations do not address the actual job functions of the Recreation Director in the specific and detailed manner that is necessary for us to decide the legal issue presented in this case. This record does not allow us to determine whether the Recreation Director "performs solely ministerial tasks with no policymaking functions," *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 373 (6th Cir. 2002), or whether the "nature of the job" of Recreation Director "is inherently political," *Hoard v. Sizemore*, 198 F.3d 205, 214 (6th Cir. 1999). Because the dispute in this case stems from "obscurities in the facts, not the law," we must affirm the district court's denial of summary judgment in favor of Defendants at this stage in the litigation. *McCloud*, 97 F.3d at 1558.

## II.    Claims Against the City and Defendants in their Official Capacity

Plaintiff's claims against Defendants in their official capacity are, in effect, claims against the City. *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978). The City is not eligible for qualified immunity, and the denial of summary judgment with respect to Plaintiff's official capacity claims is not an independently appealable "final decision" under 28 U.S.C. § 1291. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 43 (1995). Therefore, our first question is whether this Court has subject matter jurisdiction to hear the City's appeal.**5**

Although not appealable as a "final decision" under 28 U.S.C. § 1291, an appellate court can exercise pendent appellate jurisdiction on a § 1983 claim alleging municipal liability where the municipality's motion for summary judgment is "inextricably intertwined" with the qualified immunity analysis properly before the Court. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 578 (6th Cir. 2003). "[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal–that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." *Mattox v. City of Forest Park*, 183 F.3d 515, 524 (6th Cir. 1999) (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995)). In the § 1983 context, this condition is typically satisfied when the question of whether a constitutional violation occurred resolves the case against the defendants in their individual capacities and the case against the municipality's officers in their official capacities. *See, e.g.*, *id.* at 523 ("If the plaintiffs have failed to state a claim for violation of a constitutional right at all, then the City of Forest Park cannot be held liable for violating that right any more than the individual defendants can. The inquiry is precisely the same in both cases."); *Moore*, 57 F.3d at 930. But the Court lacks appellate jurisdiction to resolve issues affecting the municipality when the resolution of the qualified immunity inquiry does not conclusively determine the municipality's liability. *Crockett*, 316 F.3d at 579.

---

**4**To reiterate, the four departments outlined by the City Charter are finance, public safety, public works, and recreation. Without supporting facts in the record, we are not convinced of the dubious proposition that the *Branti* analysis of these four positions can be conducted *en masse*, as would be possible if we based our decision on Defendants' description of the responsibilities of all the department heads. That is, the nature of the responsibilities of the different department directors might lead to different results under *Branti*, as interpreted by our precedents. The specific responsibilities of the Recreation Director are indispensable to the *Branti* analysis.

**5**Although neither party raised the issue in their brief, we have an independent obligation to determine subject matter jurisdiction. *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435 (6th Cir. 2006) (citing *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004)).

We lack jurisdiction to resolve the claims against Defendants in their official capacity. Defendants' arguments concerning municipal liability do not turn on whether the Court finds a constitutional violation. Instead, Defendants contest the district court's conclusion that their decisions "may fairly be said to represent official policy."[6] *See Monell*, 436 U.S. at 694. This issue is not inextricably intertwined with the district court's denial of qualified immunity. Our conclusion with respect to qualified immunity does not in any way affect the analysis of whether Defendants' actions constituted the official policy of the City. *See Crockett*, 316 F.3d at 579; *Moore*, 57 F.3d at 930. We therefore lack jurisdiction to resolve this issue.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision denying Defendants qualified immunity, and **DISMISS** Defendants' appeal of their official-capacity claims for lack of jurisdiction.

---

[6]Defendants also argue that Plaintiff's official capacity claim must fail because, under § 1983, *respondeat superior* liability is not appropriate. *See Monell*, 436 U.S. at 691. Defendants' proposition of law is correct; however, their argument ignores the fact that Plaintiff's official capacity claim may state a claim against the City, which is a proper basis of § 1983 liability. *Id.* at 694; *Pusey*, 11 F.3d at 658.