NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0351n.06
No. 21-5987

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Aug 02, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JAMIE RAGER, Mother, Guardian and Next Friend of GC, a minor, | ) ) ) ) | |
|     Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| v. | ) ) ) | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| MCMINN COUNTY, TENNESSEE; JOE GUY, McMinn County, Tennessee, Sheriff; DERRICK SAXE, Officer, | ) ) ) ) | OPINION |
|     Defendants-Appellants. | ) ) | |

**Before: GUY, WHITE, and LARSEN, Circuit Judges.**

LARSEN, J., delivered the opinion of the court in which GUY, J., joined in full, and WHITE, J., joined in all but Section II.A. WHITE, J. (pp. 7–8), delivered a separate opinion dissenting in part.

LARSEN, Circuit Judge. After his arrest, Timothy Cook was placed in a booking cell at the McMinn County Detention Center with a previously violent, frequent flyer at the prison, Jarrod Jones. Jones attacked Cook. Although the officers on duty responded within seconds, Cook died. Jamie Rager is the mother of Cook's child, GC, who is Cook's sole heir. She brought a 42 U.S.C. § 1983 suit as GC's next friend against Officer Derrick Saxe, Sheriff Joe Guy, and McMinn County. Defendants moved for summary judgment. The district court granted the motion in part and denied it in part. Pertinent to this appeal, Officer Saxe and Sheriff Guy appeal the denial of qualified immunity, and McMinn County appeals the denial of summary judgment on Rager's *Monell* claims. For the reasons stated, we REVERSE in part and DISMISS in part for lack of jurisdiction.

I.

Tennessee police arrested Timothy Cook for driving under the influence and took him to the McMinn County Detention Center (the Jail). Officers placed him in a holding cell (Cell One) while they completed the booking. Jarrod Jones also was arrested that day, for theft and trespass. He too was placed in Cell One for booking. Although there were five cells in the Jail's booking area, it was common for multiple detainees to be held together in Cell One, the largest cell in the booking area. Jones had a lengthy criminal history and many prior stays at the Jail. Although Jones was not exhibiting aggressive behavior during booking, he had been disciplined numerous times for assaulting other inmates at the Jail. In fact, just nineteen days prior to the assault of Cook, Jones had assaulted another inmate in Cell One. Although jail officials knew of Jones's assaultive tendencies, the Jail had an informal "clean-slate" policy, meaning that every inmate who entered the Jail was treated the same, even those with past disciplinary issues, unless the inmate demonstrated behavior, upon arrival at the Jail, showing that he needed to be segregated. According to McMinn County Sheriff Joe Guy, he thought the policy was "just the right thing to do" and that officers "try not to prejudge people, even though we may have some knowledge on them."

Shortly before 6:30 p.m., Jones began to assault Cook. Deputy Dale Murray saw Jones punch Cook. Cook fell to the ground, and Jones stomped on him. Deputy Murray alerted Officer Derrick Saxe to the assault. Officer Saxe was seated at the booking desk close to Cell One. He stood up, saw the assault, grabbed the cell key, and jogged to Cell One. The officers arrived at Cell One approximately twelve seconds after noticing the fight and entered the cell approximately sixteen seconds after it had started. They immediately stopped the assault, but it was too late. Cook was unresponsive, had no pulse, and was not breathing. Despite efforts to save Cook, he later died at a local hospital.

Jamie Rager brought a § 1983 suit on behalf of Cook's child and sole heir against Officer Saxe, Sheriff Guy, and McMinn County. She also raised claims under Tennessee law. Defendants moved for summary judgment. The district court granted the motion in part and denied it in part.

Pertinent to defendants' appeal, the district court denied qualified immunity to Officer Saxe and Sheriff Guy and allowed the claims against McMinn County to proceed to trial.[1]

II.

Denial of a defendant's motion for summary judgment grounded on qualified immunity is appealable "to the extent that it turns on an issue of law." *Watkins v. Healy*, 986 F.3d 648, 658 (6th Cir. 2021) (citation omitted). We review de novo the denial of qualified immunity. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).

A. Officer Saxe

*Failure to Protect.* Officer Saxe first challenges the district court's decision to deny him qualified immunity on Rager's failure-to-protect claim. Because Cook was a pretrial detainee, his claims arise under the Due Process Clause of the Fourteenth Amendment. *See Westmoreland v. Butler County*, 29 F.4th 721, 727 (6th Cir. 2022). "[T]o establish deliberate indifference for failure to protect [under the Fourteenth Amendment], 'a defendant officer must [1] act intentionally in a manner that [2] puts the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, [4] and by failing to do so actually cause the plaintiff's injuries." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (quoting *Westmoreland*, 29 F.4th at 729).

Even if Rager can establish the first two elements, her claim fails the third. "The third element requires more than negligence because 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'" *Id.* at 639–40 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015)). To establish the third element, Rager must show that Officer Saxe "was more than merely negligent; the officer must have acted with reckless disregard in the face of an unjustifiably high risk of harm." *Id.* at 640 (internal quotation marks and citation omitted).

Here, Rager cannot make such a showing. Officer Saxe had no part in placing Cook and Jones together; they were placed in Cell One together prior to his shift. At some point, Officer

---

[1] The district court also granted summary judgment to defendants on Rager's claim for failure to fund the jail and her state-law claims. Those claims are not before the court on appeal.

Saxe noticed Cook and Jones together, though he couldn't remember when. On the day of the incident, Jones didn't offer any indication that he would suddenly and viciously attack Cook, such that Officer Saxe would have understood that failing to separate them left Cook facing an unjustifiably high risk of harm. And once Officer Saxe learned of the assault, he stopped it within sixteen seconds. In sum, it cannot be said that Officer Saxe acted with reckless disregard in the face of an unjustifiably high risk of harm. *See id.* (concluding the same where the officer likewise had minimal involvement in placing the victim and violent inmate in the same cell and where he was "otherwise follow[ing] jail procedures").

Rager responds that because Officer Saxe knew of Jones's prior violent history, he had a duty to immediately segregate Jones from the rest of the population. But she offers no case that would put Saxe on notice that he had to remove Jones from the cell where there was no indication on that day that Jones was likely to attack Cook. Rager bears the burden of establishing that Saxe is not entitled to qualified immunity. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) ("Since the defendant officers have raised the qualified immunity defense, plaintiff bears the burden of showing that defendants are not entitled to qualified immunity."). She has not done so.

Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted). Here, Officer Saxe was not plainly incompetent, nor did he knowingly violate the law. As a result, he is entitled to qualified immunity on Rager's failure-to-protect claim.

*Failure to Train*. Officer Saxe next challenges the denial of qualified immunity on Rager's failure-to-train claim. For such a claim, Rager must establish "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Winkler v. Madison County*, 893 F.3d 877, 902 (6th Cir. 2018) (citation omitted).

Rager's failure-to-train claim against Officer Saxe fails because she has not identified any person whom Saxe failed to train. To the extent Officer Saxe is a supervisory official, he is liable only if his "failure to supervise, control or train the offending individual" caused the

unconstitutional conduct. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). According to Rager, Officer Saxe is the "offending individual." *Id.* We know of no case that holds a supervisor liable for failing to supervise, control, or train himself. Rager's failure-to-train claim against Officer Saxe fails from the start, and Officer Saxe is entitled to qualified immunity.

## B. Sheriff Guy

Sheriff Guy challenges the district court's denial of qualified immunity on Rager's claims against him in his individual capacity for failure to protect and failure to train. Rager's claims are premised entirely on Sheriff Guy's creation of the "clean slate" policy that, in Rager's view, failed to protect Cook from violence and precluded Sheriff Guy from properly training employees on how to handle violent inmates. For a supervisor to be liable in his individual capacity, he must have "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008) (citation omitted). That participation must go beyond being the individual behind the policy that led to the allegedly unconstitutional conduct. *See id.* at 543–44; *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (A failure to supervise and train claim based on a supervisory official's "adherence to or continuation of a policy . . . improperly conflate[d] a § 1983 claim of individual supervisory liability with one of municipal liability."); *Harvey v. Campbell County*, 453 F. App'x 557, 563 (6th Cir. 2011) ("To the extent plaintiffs have adduced supporting findings that McClellan or Scott was a County policymaker on matters of training and was so deliberately indifferent to the need for more comprehensive training as to render the training deficiency a matter of *de facto* County policy, he would be liable, if at all, in his *official* capacity, i.e., rendering the County liable."). Because Rager's claims against Sheriff Guy are premised entirely on the policy he created as the policymaking authority for McMinn County, we must construe her claims as claims of municipal liability. Rager offers no cases indicating to the contrary, and Sheriff Guy therefore is entitled to summary judgment on Rager's claims for individual liability.

## III. McMinn County

McMinn County appeals the district court's denial of summary judgment on Rager's *Monell* claim. We must assess our jurisdiction to consider the County's appeal.

A county "is not eligible for qualified immunity, and the denial of summary judgment" on a *Monell* or official-capacity claim "is not an independently appealable 'final decision' under 28 U.S.C. § 1291." *Lane v. City of LaFollette*, 490 F.3d 410, 423 (6th Cir. 2007). Nonetheless, "an appellate court can exercise pendent appellate jurisdiction on a § 1983 claim alleging municipal liability where the municipality's motion for summary judgment is 'inextricably intertwined' with the qualified immunity analysis properly before the Court." *Id.* An appeal is inextricably intertwined if "the question of whether a constitutional violation occurred resolves the case against the defendants in their individual capacities and the case against the municipality's officers in their official capacities." *Id.* Said differently, "[a] pendent appellate claim is 'inextricably intertwined' with a properly reviewable claim on collateral appeal 'only if . . . appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." *Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013) (second alteration in original) (quoting *Mattox v. City of Forest Park*, 183 F.3d 515, 524 (6th Cir. 1999)).

McMinn County argues that we have jurisdiction over its appeal because "the § 1983 claim for failure to protect against McMinn County is inextricably intertwined with the issue of Defendant Guy's qualified immunity." Appellant Br. at 25. But as explained above, we must treat Rager's individual-capacity claims against Sheriff Guy as claims against the County because they are based entirely on Guy's policymaking authority. Counties are not entitled to qualified immunity, so there is no "qualified immunity analysis properly before the Court" that would allow us to exercise pendent jurisdiction over the *Monell* claims. *Lane*, 490 F.3d at 423. The *only* claims with respect to Sherriff Guy's conduct are *Monell* claims. We lack pendent jurisdiction over the County's appeal.

\* \* \*

We REVERSE in part and DISMISS in part for lack of jurisdiction.

HELENE N. WHITE, Circuit Judge, dissenting in part. I concur in all but Section II.A. of the majority opinion; I respectfully dissent from the reversal of the district court's denial of qualified immunity to Officer Saxe.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Pretrial detainees are similarly protected by the Fourteenth Amendment. *See Brawner v. Scott County*, 14 F.4th 585, 591 (6th Cir. 2021). In *Brawner*, we held that a pretrial detainee stated a § 1983 claim that jail officials were deliberately indifferent to a serious medical need where the jail officials "acted deliberately [and] recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 596. In *Westmoreland v. Butler County*, we applied *Brawner* in the context of a pretrial detainee who claimed that jail officials had failed to protect him from the risk of violence at the hands of his fellow detainees and held that a deliberate indifference claim for a jail official's failure to protect a pretrial detainee is viable if the officer "[1] act[s] intentionally in a manner that [2] puts the plaintiff at substantial risk of harm, [3] without taking reasonable steps to abate that risk, and [4] by failing to do so actually cause[s] the plaintiff's injuries." 29 F.4th 721, 729 (6th Cir. 2022). Accordingly, the key question here is whether Saxe was "more than merely negligent" and instead "acted with reckless disregard of an unjustifiably high risk of harm" by failing to remove Cook from his holding cell with Jones. *Id.* at 730.

The majority describes Jones as a "previously violent, frequent flyer at the prison." This does not fully capture Jones's history at the Detention Center. Jones had been incarcerated at the Detention Center fifteen times before he assaulted and killed Cook in Holding Cell One. On several of those occasions, he was disciplined for assaulting other inmates. Most notably, just nineteen days before Jones killed Cook, Jones assaulted a pretrial detainee in the same holding cell. The incident report of that assault includes details very similar to those here: the officer working the booking counter "looked up from the prisoner register and saw Inmate Rodriguez on the ground and Inmate Jones punching him in the face." R.6-2, PID 93. McMinn County categorizes inmate assault or homicide a "Class A" inmate violation, the highest offense level, which can result in disciplinary segregation of up to thirty or sixty days per offense, administrative segregation, an increase in an inmate's sentence, forfeiture of good-time credits, and a referral for

criminal prosecution.  R.28-5, PID 240, 258.  That Jones had committed several "Class A" inmate violations during his fifteen stays at the Detention Center suggests that his history was known by the Detention Center staff.  And, when deposed, Saxe stated that he knew "[Jones] from being arrested before," agreed that Jones had "caused trouble in the jail before" and noted that he was "sure [he] was" personally involved in an incident with Jones but could not remember which incident.  R.28-1, PID 216-217.

There is ample evidence that Jones had a proclivity for violence against other inmates and detainees that was random and unprovoked.  Jones's well-documented history of assaults against other inmates, together with Saxe's testimony that he was aware of Jones's past, is sufficient to support an inference that Saxe appreciated, or was recklessly indifferent to, the risk to Cook's safety when he left him in a cell with Jones.  As the district court explained, "[a] reasonable jury could find that Defendant Saxe knew of the risk Jones posed to [Cook] and he disregarded that risk by allowing the two to remain in a dark cell together."  R.37, PID 420.[1]  Accordingly, I would affirm the district court's denial of qualified immunity to Saxe.

---

[1] In *Stein v. Gunkel*, 43 F.4th 633 (6th Cir. 2022), this court held that jail officers were protected by qualified immunity against a failure-to-protect claim brought by a pretrial detainee who was assaulted in his cell by another detainee.  *Stein* is distinguishable because here Saxe had actual knowledge of Cook's violent tendencies against other inmates and detainees at the Detention Center, in contrast to the officers in *Stein* who, at best, knew only that the detainee had been arrested in connection with outstanding assault warrants.  Further, the officers in *Stein* were involved in classifying the pretrial detainee; they did not have the opportunity to place him in or remove him from the cell with his attacker.