**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0101n.06

Case No. 17-1073

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 01, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES BARTON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF LINCOLN PARK; RYAN | ) | MICHIGAN |
| BEHRIK, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: MOORE, WHITE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** This appeal concerns whether Defendant-Appellants City of Lincoln Park (the "City") and Officer Ryan Behrik ("Officer Behrik") were entitled to summary judgment on Plaintiff-Appellee James Barton's ("Barton") 42 U.S.C. § 1983 complaint. Defendants contend that the district court erred in two ways. First, they argue the district court should have granted Officer Behrik qualified immunity because he was neither a witness nor participant with respect to the alleged excessive force, had no opportunity to intervene, and a reasonable officer in his position would not have been on notice of either excessive force or a duty to intercede. Second, Defendants argue that the district court erred in denying the City's summary-judgment motion because the record fails to support any inadequate training or policies.

The district court denied Officer Behrik's qualified-immunity based summary-judgment motion on the grounds that his mere presence at the scene provided an avenue for a failure to intervene claim, particularly because he was close enough to hear commotion and yelling. The district court denied the City's summary-judgment motion based primarily on the responding officers' inability to name their former supervisors or recall the last time they had received training on the use of force, and on possibly questionable responses to previous complaints lodged against Officer Jason Lasinskas. For the reasons stated below, we **REVERSE** the judgment of the district court as to Officer Behrik and **DECLINE** to exercise pendent jurisdiction over the City's summary-judgment appeal.

## I.

On November 21, 2013, Plaintiff James Barton and Todd Daw visited the Best Damn Bar & Grill in Lincoln Park, Michigan. Barton and Daw each had seven to nine beers before walking to Barton's home around 1:30 a.m. Once there, Barton asked his live-in girlfriend, Michelle Faulkner, to drive Daw home. Faulkner refused and an argument ensued. As the quarrel continued, Faulkner's daughter—Susan Ferrante—called the police.

Lincoln Park Police Officers Scott Kerr and Jason Lasinskas first responded to Ferrante's call. Upon arrival, the officers observed Ferrante's boyfriend—Bradley Dorow—outside the home and heard Barton, Faulkner, and Ferrante yelling inside. The officers entered the home and ordered Barton to calm down, which he eventually did. Subsequently, two other officers— Chad Pierson and Behrik—arrived and spoke to Daw and Dorow outside. At some point, Officer Pierson entered the home. Officer Behrik remained outside with Daw and Dorow.

Barton testified that Officers Kerr and Lasinskas then informed him that he was under arrest while grabbing and twisting his hand. Barton pulled his hand away because it had been

recently broken and surgically repaired. Faulkner and Barton each described Barton's recent injury and asked that the officers not bend his arm. Barton testified that Officers Kerr and Lasinskas ignored these requests, threw him to the floor, and handcuffed him. Barton also testified that he felt a couple of blows to his side and lower back while subdued on the floor.

Officers Kerr and Pierson then pulled Barton up before pushing him head-first through an aluminum screen door, causing a two-inch laceration on his forehead. According to Barton, once outside, he was escorted to a police vehicle. Barton testified that before being placed in the police vehicle, but before he was placed in the vehicle, he was pulled away from behind and choked in the process. During the entire interaction, Officer Behrik was outside with Daw and Dorow. Officer Behrik admits to hearing commotion inside the home and upset yelling outside, but did not enter the house, witness any alleged force, or otherwise intervene. Barton was later charged with four crimes related to domestic violence and assaulting, resisting, and obstructing an officer. All but one of the charges were later dropped.

Barton filed a complaint in the United States District Court for the Eastern District of Michigan asserting three claims: (1) excessive force pursuant to 42 U.S.C. § 1983 against each responding officer; (2) Fourth Amendment violations against the City of Lincoln Park for failure to adequately train, supervise, or discipline its officers; and (3) gross negligence against both the officers and the City. In his complaint, Barton claims to have suffered physical and mental injuries, including the laceration to his head, additional injury to his hand and arm, and subsequent back pain, anxiety, and nervousness. Following discovery, Defendants moved for summary judgment based in part on their contention that the individual defendants were shielded from liability under § 1983 by the doctrine of qualified immunity.

The district court denied Defendants' motion. As to Officer Behrik, the court found that issues of material fact precluded an award of summary judgment on qualified immunity grounds. Specifically, the district court found that although it is "undisputed that Officer Behrik did not actively participate in or supervise the application of force," his mere presence in close enough proximity to the alleged force to hear signs of it provided a possible basis for relief. The district court further concluded that the evidence was sufficient to sustain a § 1983 claim against the City because inferences could be drawn from the officers' testimony that they lacked adequate training and were not subject to proper discipline in response to complaints made against them. Officer Behrik and the City filed this timely appeal, asserting that the district court erred in denying Officer Behrik qualified immunity, and that the record evidence refutes Barton's failure to train and supervise claims against the City.

## II.

The district court had jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343. The district court entered its order granting in part and denying in part Defendants' motion for summary judgment on December 22, 2016, from which Defendants timely appealed on January 20, 2017. This Court has jurisdiction to review the judgment as to Officer Behrik's appeal pursuant to 28 U.S.C. § 1291. Defendants argue that appellate jurisdiction over the City's appeal is conferred by the principles of pendent appellate jurisdiction, and that the denial of their motion is inextricably intertwined with the qualified immunity analysis properly before this Court.

## III.

Defendants first challenge the district court's denial of qualified immunity. Ordinarily, we lack jurisdiction over an appeal of a denial of a motion for summary judgment. *Summers v.*

*Leis*, 368 F.3d 881, 886 (6th Cir. 2004). However, 28 U.S.C. § 1291 grants circuit courts jurisdiction over "appeals from all final decisions of the district courts," which include collateral orders—those that "finally determine claims of right separable from, and collateral to, rights asserted in the action" that are "too important to be denied review." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949). An order denying qualified immunity is a collateral order because it is conclusive, separable from the merits of the action and, as the purpose of qualified immunity is to provide officers with "immunity from suit rather than a mere defense to liability," is effectively unreviewable on appeal from a final judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). We review de novo a district court's denial of summary judgment based on qualified immunity. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013).

Circuit courts, however, can review a denial of qualified immunity only "to the extent that it turns on an issue of law." *Mitchell*, 472 U.S. at 530. The appeal cannot be from a district court's determination that there is a genuine dispute of material fact. *Johnson v. Johnson*, 515 U.S 304, 320 (1995). Therefore, a defendant appealing a denial of qualified immunity must concede the plaintiff's facts. *See Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009). Still, "[e]ven if a defendant refuses to concede all of the plaintiffs' facts," *Zulock v. Shures*, 441 F. App'x 294, 300 (6th Cir. 2010), and even if "the district court couched its ruling in terms of factual disputes," *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008), we maintain jurisdiction over purely legal questions. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) ("aside from the impermissible arguments regarding disputes of fact, the defendant also raises the purely legal question of whether the facts alleged ... support a claim of violation of clearly established law.") (internal quotations and citations omitted.").

### A. The District Court Erred in Denying Officer Behrik Qualified Immunity and Summary Judgment on Barton's Fourth Amendment Excessive Force Claim

Defendants argue that the district court erred in denying Officer Behrik qualified immunity as there are no allegations that Officer Behrik used force of any kind against Barton, nor did he have either the opportunity or ability to intervene to prevent the other officers' alleged use of excessive force. (Appellants' Br. at 20-31.) Barton contends that Officer Behrik is not entitled to qualified immunity because the facts alleged allow for a finding that he turned a blind eye to excessive force. (Appellee's Br. at 19-24.) We agree with Defendants.

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158, 167 (1992). Therefore, overcoming an officer's entitlement to qualified immunity requires that a plaintiff demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that right was clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In response to an assertion of qualified immunity, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). "If *no* reasonably competent officer would have taken the same action, then qualified immunity should be denied; however, 'if officers of reasonable competence could disagree on [the legality of the action], immunity should be

recognized.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (alteration and emphasis in original) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In denying Officer Behrik's motion, the district court observed: "Behrik's mere presence at the scene of alleged excessive force provides an avenue for [Barton's] 'failure to intervene' claim." RE 42, PageID #503. Although *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982), does quote with approval a Seventh Circuit case holding that mere presence while a harm is being committed may be sufficient to support a claim, more recent precedent in this Circuit makes clear that more is required. *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (officer's "mere presence during the altercation, without a showing of direct responsibility cannot subject them to liability") (citing *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)); *see also Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984) ("As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability.") (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)); *see also Binay*, 601 F.3d at 650 (mere presence is not enough; "[e]ach defendant's liability must be assessed individually based on his own actions.") (citations omitted).

We have held that although an officer's "mere presence during the altercation, without a showing of some direct responsibility, cannot suffice to subject [the officer] to liability," *Burgess*, 735 F.3d at 475, the officer may be liable where the officer supervised the offending officer or owed the plaintiff a duty of protection. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Generally, a police officer will be liable for breaching a duty of protection when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

As to the first prong, Barton presents no facts to support that Officer Behrik knew or had reason to know that excessive force would be used or was being applied. Barton asserts that Officer Behrik stood outside the house and heard a commotion, while Officers Kerr and Lasinskas subjected him to excessive force. Barton acknowledges that Officer Behrik remained outside when Officers Kerr and Pierson led him head-first through the screen door, and subsequently pulled him by the neck out of the police vehicle he was being placed in, restricting his airway in the process.

On these facts, even viewed in the light most favorable to Barton, Officer Behrik did not observe any excessive force occurring inside the house. Indeed, he saw nothing at all. Nor did he have any reason to know that excessive force would be or was being used. Though he heard "commotion" and "yelling," this is typical of any scenario in which a verbal argument with intoxicated participants ensues in the middle of the night. There is no allegation that the comments heard were anything other than the same commotion that served as the basis for the original call. Nor is there any assertion that Officer Behrik heard anything indoors that would intimate excessive force—such as cries of pain, calls for backup, calls for help, or any assertion that excessive force was being applied. Moreover, this does not raise a question of fact—both Defendants and the court take all of Barton's allegations as true—as Barton has identified no facts that would permit an inference creating a dispute. Thus, the district court erred in finding that the evidence presented against Office Behrik lends itself to a finding that he knew or had reason to know that excessive force would be or was being used.

As to the second prong, opportunity and means to prevent harm, there is no duty to intervene where one officer's act of excessive force occurs so rapidly that a second officer on the scene lacks "'a realistic opportunity to intervene and prevent harm.'" *Wells v. City of Dearborn*,

538 F. App'x 631, 640 (6th Cir. 2013) (quoting *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 507 (6th Cir. 2007)). Indeed, this Court has previously found that a duty to intervene did not arise where an officer gave a warning before applying a taser but other officers present did not have opportunity or means to prevent it. *Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012). The court reasoned that, warning or no, the officer lacked the opportunity to stop the force because the entire altercation lasted only minutes, and the excessive force "could only have lasted for a fraction of this time." *Id.* at 532.

Here, Barton presents no facts to support that Officer Behrik had "opportunity and means" to prevent the alleged excessive force. That is, Barton cannot show that the incident lasted long enough for Officer Behrik to perceive what was going on and intercede to stop it. *See Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996); *see also Kowolonek*, 463 F. App'x at 539 (defendant lacked the opportunity to intervene given rapid sequence of events); *Ontha*, 222 F. App'x at 506 (six or seven seconds insufficient time to compel intervention). Barton has not shown that Officer Behrik was in clear view or reasonable range of any excessive force, was in ongoing voice contact with his fellow officers or Barton, or that any party apprised him of the use of any force. Nor has Barton supported that Officer Behrik was close enough to the front screen door to ensure that Barton was not forced through it—or even that he witnessed that incident at all.[1] Finally, with regard to Barton being pulled away from the vehicle and choked, it remains unclear how Officer Behrik could have intervened. Though there is ambiguity as to how long that event lasted—or what injuries it may have caused—there is no allegation that it lasted long enough to provide Officer Behrik the opportunity to intervene. Moreover, Barton does not suggest that Officer Behrik had any basis for anticipating the use of force in the house, the exit

---

[1] We note, as do Defendants, that Barton's assertion that Officer Behrik was "only a yard" away from the house is, at best, disingenuous. (Appellants' Br. at 1-2.) The quote upon which that fact is based clearly states that Officer Behrik was a "front yard" away from the house, rather than a three-foot unit of measurement.

from the house, or the subsequent choking and its result as those events were split-second incidences that occurred without warning. On these facts, there was not enough time for Officer Behrik to both perceive the incident and intervene to assist Barton.

To the extent that Barton argues that the entire incident was of ample duration to permit Officer Behrik to be on notice of the excessive force and to intercede, this too is unavailing. Even taking all of Barton's allegations as true—as we must—the incident cannot be viewed as a singular event as to Officer Behrik. He was not in view of any of the indoors events, nor are there allegations that he heard anything that would alert him of the use of actual or impending excessive force. Barton presents no question of fact supporting that Officer Behrik witnessed the screen door incident—thus giving him any warning about continued use of force. These cannot be viewed as an interconnected singular sequence. Indeed, the district court acknowledged there was no "ongoing conduct." RE 42, PageID #509. Even under the most generous construction, the allegations fail to describe a single episode of sufficient duration to support a conclusion that Officer Behrik stood by, made no attempt to assist the victim, and thereby became a tacit collaborator. As this Circuit has underscored: "courts have been unwilling to impose a duty to intervene where, as here, an entire incident unfolds 'in a matter of seconds.'" *Ontha*, 222 F. App'x at 506 (collecting cases). The evidence Barton presented dictates the same result.

Though we need not reach the second inquiry—whether a right is "clearly established" such that any reasonable official in the defendant's shoes would have understood that he was violating it, *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014), we address it briefly. The question here is whether a reasonable officer in Officer Behrik's position would have been on notice of a duty to intercede. Given that the parties cite no authority and we have found none that imposed a duty of protection under analogous circumstances, we must conclude that at no

point did Officer Behrik's failure to intervene violate clearly established law. Behrik did not stand idly near the front lawn while others inflicted excessive force. He was the last officer to arrive at the scene and provided backup by remaining with Daw and Dorow outside the house while the other officers addressed the conflict inside. We are aware of no case law holding that the "commotion" Officer Behrik heard inside, or any quickly occurring incident with Barton outside, required him to abandon the two men—whom he was watching or "keeping" outside "until we knew what we had"—to intervene with the other officers. Because at the time of the incidents, it would not have been evident to a reasonable officer in Officer Behrik's position that he was obligated to leave the two men and take action to prevent any use of excessive force. Officer Behrik is entitled to qualified immunity as to Barton's claim that he breached a duty of protection.

### B. This Court Lacks Jurisdiction Over the District Court's Denial of the City's Motion for Summary Judgment on Barton's Monell Claims

The City also appeals the district court's denial of summary judgment on Barton's *Monell*[2] claim. However, the City, unlike Officer Behrik, "is not entitled to invoke the defense of qualified immunity and therefore has no grounds to seek an interlocutory appeal of the district court's denial of its motion for summary judgment." *Campbell v. City of Springboro*, 700 F.3d 779, 790 (6th Cir. 2012). The City maintains that by mentioning the failure-to-train and failure-to-supervise complaints in addressing Officer Behrik's claim to qualified immunity, inextricably intertwined the question of the City's alleged custom or policy, thus allowing this Court to review that otherwise non-final denial of summary judgment. (Appellants' Br. at 31-35.) We disagree.

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

"Although not appealable as a final decision under 28 U.S.C. § 1291, an appellate court can exercise pendent appellate jurisdiction on a § 1983 claim alleging municipal liability where the municipality's motion for summary judgment is inextricably intertwined with the qualified immunity analysis properly before the Court." *Lane v. City of LaFollette*, 490 F.3d 410, 423 (6th Cir. 2007) (internal quotation marks omitted). A pendent appellate claim is "inextricably intertwined" with a properly reviewable claim on collateral appeal "only if . . . appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." *Mattox v. City of Forest Park*, 183 F.3d 515, 524 (6th Cir. 1999) (citation omitted). Though the exercise of pendent jurisdiction is a matter of discretion, "the 'inextricably intertwined' requirement is not meant to be loosely applied . . . . Rather [it] is satisfied only if the resolution of the properly appealable issue 'necessarily and unavoidably' decides the non-appealable issue." *Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 287 (6th Cir. 2010) (quoting *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010)).

While the district court's mention of the *Monell* claims in addressing Officer Behrik's qualified-immunity defense is curious, it does not inextricably intertwine the two issues. Although we agree that Officer Behrik is entitled to qualified immunity, that determination turns solely on Officer Behrik's duty to intervene on any alleged force, rather than any training or policy. The City's liability hinges on its failure to train and supervise the officers. This court has previously recognized that an officer's appealable claim and a city's non-appealable claim are inextricably intertwined where "the finding of nonexistence of a constitutional claim for immunity purposes necessarily decides[s] the whole case not only in favor of the officer, but also in favor of the city . . . ." *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996). Thus, Officer Behrik's challenge to the denial of qualified immunity is not "inextricably

intertwined" with the district court's summary-judgment ruling on the City's *Monell* liability. Moreover, the claims against the remaining officers were not before the district court. Those claims of excessive force will continue. Because resolution of Officer Behrik's interlocutory appeal does not necessarily determine the City's training and supervision obligations, we do not have jurisdiction to consider the City's municipal-liability appeal.

## IV.

For the reasons set forth above, we reverse the district court's denial of qualified immunity as to Officer Behrik and decline to address the district court's denial of the City of Lincoln Park's motion for summary judgment for lack of jurisdiction.