NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0112n.06

No. 21-2724

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LISA WINDSOR-HART, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Mar 09, 2022 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| GENESEE TOWNSHIP, MICHIGAN, | ) | UNITED STATES DISTRICT |
| Defendant, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| SEAN KELLEY; DAVID BECKER, | ) |  |
| Defendants-Appellants. | ) |  |
|  | ) |  |

Before: WHITE, THAPAR, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Believing that her daughter had just died from an overdose, Lisa Windsor-Hart broke down crying in a gas station. For half an hour, she sobbed and made her distress known. Then her bad day got worse. Someone called the police, and she was arrested for disorderly conduct. During the arrest, the officers slammed Windsor-Hart into a soda machine, took her to the ground, and knelt on her back. Windsor-Hart filed a § 1983 action. The officers moved for summary judgment, claiming qualified immunity. The district court denied the motion and the officers appealed. We dismiss for lack of jurisdiction.

I.

Late at night, and very distressed, Windsor-Hart stumbled into a gas station. She told the attendant that she was too hysterical to drive and handed over her keys. She cried that she was lost and that her daughter had just died. At first, the attendant thought Windsor-Hart was drunk.

But, during their conversation, the attendant decided that Windsor-Hart was just "really, really upset."

After several minutes, Windsor-Hart ended up on the floor, sobbing uncontrollably. The attendant did her best to comfort Windsor-Hart, with little success. Eventually, two employees from an adjoining McDonald's came over; one of them helped Windsor-Hart to her feet, hugged her, and consoled her. They escorted Windsor-Hart back to the McDonald's and sat her down in a booth. At some point, one of the McDonald's managers called the police for a welfare check.

Three police officers arrived and joined Windsor-Hart at the booth. What happened next is disputed. According to Windsor-Hart, the officers made light of her situation, chitchatting and laughing among themselves, without trying to help. According to the officers, Windsor-Hart immediately became belligerent and cursed at them. Either way, a heated exchange occurred, and everyone agrees that Windsor-Hart got up and left the McDonald's.

Windsor-Hart went back to the gas station and the officers followed. The parties dispute whether the officers told her that she was under arrest at that point. Then one officer grabbed her left wrist and held it behind her back, while another grabbed her right arm. Windsor-Hart recoiled and tried to yank free. Seconds later, her face slammed into a soda machine, sending a panel flying, and two officers took her to the ground. How this happened is disputed. The officers claim that Windsor-Hart tripped and that her forward momentum sent all three of them into the soda machine and onto the ground. Windsor-Hart claims that she never lost her footing but was intentionally pushed into the soda machine and tackled to the ground, leaving her unconscious.

After hitting the ground, Windsor-Hart lay still as one of the officers knelt on her back. Eventually, they rolled her over so an EMT could check on her. Then they hauled her to the patrol car.

Most of the incident was caught on video, including Windsor-Hart's arrival, her breakdown, her interaction with the gas station employees, the altercation with the officers, and her injury. Only Windsor-Hart's time in the McDonald's is missing.

Windsor-Hart pleaded guilty to two counts of disorderly conduct. Then she filed this 42 U.S.C. § 1983 action against the three officers and the Genesee Township, alleging that the force used during her arrest was excessive. The officers moved for summary judgment on the ground that they are entitled to qualified immunity. The district court judge held a hearing, but ultimately denied the motion for summary judgment. The officers appealed.

II.

We review a denial of qualified immunity de novo viewing the facts in the light most favorable to Windsor-Hart. *Bey v. Falk*, 946 F.3d 304, 311–12 (6th Cir. 2019). But we lack jurisdiction if the officers' "sole argument . . . goes to whether there exists a genuine issue of fact for trial." *Gregory v. City of Louisville*, 444 F.3d 725, 743–44 (6th Cir. 2006). A defendant who is denied qualified immunity may bring an interlocutory appeal only if that appeal involves an "abstract or pure legal issue." *Id.* at 742 (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).

The plaintiff has the burden to overcome qualified immunity. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Here, the constitutional right is the Fourth Amendment's prohibition on excessive force. *See Cass v. City of Dayton*, 770 F.3d 368, 374 (6th Cir. 2014). The test is whether the

officers' actions were "objectively reasonable" in light of the circumstances confronting them. *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Windsor-Hart argues that, in 2017, it was clearly established that the officers' conduct constituted excessive force. On her version of the facts, the officers slammed her head into a hard object, wrestled her to the ground, and knelt on her back, all while she was neither resisting arrest nor posing a threat to anyone. Windsor-Hart points to several cases to establish this point. *See, e.g.*, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (no qualified immunity for officer who knelt on a man's back after he was already subdued); *Burden v. Carroll*, 108 F. App'x 291, 293–94 (6th Cir. 2004) (no qualified immunity for an officer who slammed a man into a wall, when the man posed no safety risk). And the officers do not contest that Windsor-Hart's description would constitute a clearly established violation of the Fourth Amendment.[1]

Instead, they contest Windsor-Hart's version of the facts, arguing that she was belligerent, resisting arrest, and that she posed a threat to them and the public. In particular, they claim that the district judge misapplied the three factors from *Graham v. Connor*: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest. *Burgess v. Fischer*, 735 F.3d 462, 472–73 (6th Cir. 2013). But each of their arguments turns on fact, not law.

First, the officers argue that the district court erred by not treating Windsor-Hart's crime as severe. The officers agree that disorderly conduct is generally not a violent or serious crime,

---

[1] In their opening brief in this court, the officers offer one conclusory line on this subject: "[T]he Officers are entitled to qualified immunity because the force deployed was objectively reasonable and, even if it was not, it was not clearly established on April 2, 2017, that the Officers' conduct violated Plaintiff's Fourth Amendment rights in these particularized circumstances." But they make no effort to develop this argument. It is, therefore, forfeited for purposes of this appeal. *United States v. Johnson*, 440 F.3d 832, 845–46 (2006).

which counsels in favor of using less force. *Carpenter v. Bowling*, 276 F. App'x 423, 426 (6th Cir. 2008). But they emphasize the word *generally* and argue that Windsor-Hart was unpredictable and making a scene. There is no doubt that Windsor-Hart was distressed. Whether she was unpredictable or violent, though, depends on contested facts. According to the officers, Windsor-Hart was a threat almost immediately, cursing at them, lunging at them, and pointing aggressively. The officers say she was drunk and out of control. But Windsor-Hart says that she was only crying and asking for help, and if she cursed, it wasn't at the officers. She also says she was sober, which is corroborated by the attendant. The officers' argument does not accept Windsor-Hart's version of the contested facts, *Adams v. Blount Cnty.*, 946 F.3d 940, 948 (6th Cir. 2020), and "take[s] issue with the district court's determination that there exists a genuine issue of fact for trial." *Gregory*, 444 F.3d at 743. Further, the video lacks audio, and because it does not show key moments of the interaction, it does not blatantly contradict Windsor-Hart's version of the facts. See *Adams*, 946 F.3d at 948. Thus, we lack jurisdiction to consider this argument.

Second, the officers argue that Windsor-Hart was a danger to them and to the public. But again, essential facts are contested. The officers describe Windsor-Hart's arrest as a battle for control. They say she thrashed about and prepared to punch them. Windsor-Hart describes the situation differently. She says that without warning, the officers grabbed her from behind and she shrunk away in surprise. Then, in a matter of seconds, she was unconscious on the floor. The video doesn't settle the matter. We see the officers grab Windsor-Hart's wrists, her arms yank back, and then a moment later she hits the soda machine and crashes to the floor.

The officers also believe that force was justified because Windsor-Hart was about to drive while intoxicated. But, critically, the parties dispute whether Windsor-Hart was drunk. They agree that Windsor-Hart got up and left the McDonald's, but her reason for doing so is contested. The

officers claim that Windsor-Hart said she was leaving. But Windsor-Hart claims that she told the officers she was going to sit in her car and calm down. She also claims that the officers knew that she had previously handed her keys to the attendant; and the attendant says she told the officers as much. So we lack jurisdiction over this argument as well. *Gregory*, 444 F.3d at 743.

Finally, the officers argue that Windsor-Hart was resisting arrest and that it is objectively reasonable to take a non-complying arrestee to the ground. *See Wells v. City of Dearborn Heights*, 538 F. App'x 631, 637 (6th Cir. 2013). But this seemingly legal argument also turns on hotly contested facts. The officers claim that they intended to take Windsor-Hart to the ground—and that anything else was incidental. After they grabbed her, they say Windsor-Hart tripped, and her momentum sent her into the soda machine. Windsor-Hart swears she never tripped. Instead, she and the attendant describe the officers as shoving or slamming her head into the soda machine. Again, the video does not clearly resolve the matter in favor of the officers. So whether the officers can rely on a case like *Wells* turns on a disputed factual predicate that lies beyond our jurisdiction. *Gregory*, 444 F.3d at 743.

Whether Windsor-Hart was resisting arrest is also disputed. Windsor-Hart claims that the officers never told her she was under arrest. She claims that she pulled away from their grasp by instinct, and that she would have fully cooperated had the officers said something to her. A McDonald's employee partially corroborates this story. He claims that the officers told Windsor-Hart to stop but doesn't remember them saying she was under arrest. The gas station attendant, on the other hand, remembers the officers telling Windsor-Hart to put her hands behind her back. The officers claim that they did tell Windsor-Hart that she was under arrest and that they told her to put her hands behind her back only after she walked away. Again, the silent video doesn't

resolve the dispute. So the officers' argument turns on this factual dispute too, and we again lack jurisdiction. *See id.*

The officers argue that the video blatantly contradicts Windsor-Hart's side of the argument. *See Scott v. Harris*, 550 U.S. 372, 379–80 (2007). The officers point out that Windsor-Hart appears to say "for what" as she pulls away from their grasp, so they conclude that she must have been resisting arrest. But the video is unclear. And even if Windsor-Hart did say "for what," that hardly shows to a certainty that Windsor-Hart was resisting arrest. Much is still debated. For example, what exactly did the officers tell her, and how soon after they said it did they grab her? The video cannot resolve these questions; so we lack jurisdiction. *See Gregory*, 444 F.3d at 743.

\* \* \*

We DISMISS the appeal for lack of jurisdiction.